## Charles Sayles

### v.

## Piccadilly Cafeterias, Inc.

Record No. 901525

November 8, 1991

Present: All the Justices

*Walter H. Emroch* for appellant.

*Richard W. Schaffer (Frank B. Miller, III; S. Vernon Priddy, III; Robert B. Delano, Jr.; Henry S. Carter; Sands, Anderson, Marks & Miller*, on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

The dispositive issue in this appeal is whether a negligent employee acted outside the scope of his employment, as a matter of law, thereby defeating a third-party claim of damages against his employer under the doctrine of *respondeat superior.*

Charles Sayles, a passenger in an automobile operated by Theodore Bolling, Jr., was seriously and permanently injured in a two-car collision. The negligent operator of the other automobile, Stephen Belcastro, was an employee of Piccadilly Cafeterias, Inc. (Piccadilly), located in the Richmond area. Sayles sued Piccadilly, claiming that Piccadilly was vicariously liable for Belcastro's negligence under the doctrine of *respondeat superior.* A jury returned a verdict in favor of Sayles and against Piccadilly in the amount of $11,500,000. The trial court set aside the verdict and entered judgment in favor of Piccadilly. Sayles appeals.

Piccadilly annually sponsored, funded, and conducted Christmas parties as a fringe benefit for its employees and to improve

employer-employee relations. These functions were subject to detailed regulations contained in Piccadilly's operations manual. Attendance at the parties was strictly voluntary, and those attending were not compensated.

The 1987 Christmas party was hosted by Piccadilly on December 21. Piccadilly provided wine and beer, and the party did not commence until all Piccadilly employees had completed their work for the day. Among the Piccadilly employees in attendance were Sayles, Bolling, and Belcastro.

Belcastro left work about 9:30 that night. Between 10:30 and 11:00 p.m., he returned to Piccadilly's premises with his girl friend to attend the Christmas party. While at the party, he became intoxicated.

About midnight, Belcastro, his date, Sayles, and Bolling left the party, intending to go to another party that was not hosted by Piccadilly. Belcastro drove his car from Piccadilly's parking lot, and Sayles and Bolling departed in a car operated by Bolling. The two cars collided about five minutes later on Wistar Road in Henrico County.

After departing the parking lot, Belcastro was following Bolling. Immediately before the collision, Belcastro drove his car into the left-hand lane of the road, crossing a double, yellow center line. Belcastro then lost control of his car and struck the Bolling car. In explaining his conduct, Belcastro said that he "was fooling around at the time" and his judgment was affected by the alcohol he had consumed at the Piccadilly party.

Sayles contends that Belcastro was acting within the scope of his employment while attending the Piccadilly party. Sayles also contends that, when Belcastro began to drive his automobile in an intoxicated condition while he was on Piccadilly's premises, Belcastro committed a negligent act within the scope of his employment. According to Sayles, Belcastro's negligence continued to be within the scope of his employment until Sayles was injured approximately five minutes later at a point off Piccadilly's premises. In support of this contention, Sayles relies upon *Kim* v. *Sportswear*, 10 Va. App. 460, 393 S.E.2d 418 (1990).

In *Kim*, a workers' compensation case, an employee was fatally injured while attending a company-sponsored and hosted Korean New Year's party when a fellow employee accidentally struck the employee with an automobile. *Id.* at 463, 393 S.E.2d at 420. The injury occurred on the employer's premises as the em-

ployee exited the door of the factory where she worked. *Id.* Attendance at the party was "virtually unanimous." *Id.* at 464, 393 S.E.2d at 420. Although attendance was not mandatory, the Court of Appeals concluded that "the degree of expectation from the employer that all employees would attend was so high, when considered in relation to the cultural and ethnic pressures that existed, the close correlation between the social event and the employment are apparent . . . [, and attendance] was expected of all employees." *Id.* at 466, 393 S.E.2d at 421-22.

The dispositive issue in *Kim* was whether the party was sufficiently work related that an injury suffered by an attending employee was compensable under the Workers' Compensation Act, Code §§ 65.1-1 to -163 (the Act). *Id.* at 468, 393 S.E.2d at 423. The Act defines a compensable injury as an "injury by accident . . . arising out of and in the course of the employment." Code § 65.1-7. The Court of Appeals held that, under the facts in *Kim*, the party was so closely connected to and associated with the decedent's employment "in purpose, time, location, and function" that her injury "arose out of and in the course of her employment." *Id.*

█ *Kim*, however, is distinguishable from the present case. First, the test for determining whether an accidental injury "[arose] out of and in the course of the employment," within the meaning of Code § 65.1-7, is not the same as the test for determining whether a servant acted within the scope of his employment under the doctrine of *respondeat superior*. Indeed, we have said that the Act should be liberally construed in favor of a claimant, "but this construction has not been expanded to include a third person, as its beneficiary, in contradistinction to an employee suing his employer." *Monumental Motor Tours v. Eaton*, 184 Va. 311, 316, 35 S.E.2d 105, 107 (1945).

█ Second, there are significant factual differences between *Kim* and the present case. In *Kim*, unlike in the present case, the injury occurred on the employer's premises, the employees were expected to attend the party, and the negligent employee was not intoxicated. Accordingly, we conclude that *Kim* is inapposite.

Sayles further contends that the critical time for determining whether the doctrine of *respondeat superior* applies is at the time the negligent conduct commenced (i.e., when Belcastro began to drive his automobile in an intoxicated condition while on Piccadilly's premises). As support for this proposition, Sayles relies

upon numerous cases from foreign jurisdictions. We, however, have adopted and adhere to a different rule.

In Virginia, it is well established that a plaintiff who seeks to recover damages from a master for injuries caused by a servant must establish that the master-servant relationship "existed at the time of the injuries." *McNeill* v. *Spindler*, 191 Va. 685, 694, 62 S.E.2d 13, 17 (1950). More specifically, we have said as follows:

> The doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong *at the time and in respect to the very transaction out of which the injury arose.*

*Blair* v. *Broadwater*, 121 Va. 301, 308, 93 S.E. 632, 634 (1917) (emphasis added) (quoting *Wyllie* v. *Palmer*, 137 N.Y. 248, 257, 33 N.E. 381, 383 (1893)); *accord Nixon* v. *Rowland*, 192 Va. 47, 54, 63 S.E.2d 757, 761 (1951); *Manuel* v. *Cassada*, 190 Va. 906, 913, 59 S.E.2d 47, 50 (1950); *Barnes* v. *Hampton*, 149 Va. 740, 744-45, 141 S.E. 836, 837 (1928).

We also have said that an act is deemed to be within the scope of the employment if

> (1) it be something fairly and naturally incident to the business, and (2) if it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.

*Tri-State Coach Corp.* v. *Walsh*, 188 Va. 299, 307, 49 S.E.2d 363, 367 (1948); *Davis* v. *Merrill*, 133 Va. 69, 77, 112 S.E. 628, 630-31 (1922).

We think the record in the present case clearly establishes that, at the time of Sayles' injury, Belcastro was acting "wholly from some external, independent, and personal motive" and not as an incident to Piccadilly's business. Thus, we hold, as a matter of law, that when Belcastro negligently caused Sayles' injuries, Belcastro was not acting within the scope of his employment.

Accordingly, we will affirm the trial court's judgment.

*Affirmed.*