Connie **JAMISON**, Plaintiff–Appellee,

v.

Jerry **WILEY**, Defendant–Appellant,

**United States of America, Defendant–Appellee.**

No. 92–1628.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1993.

Decided Jan. 13, 1994.

Steven Ray Minor, White, Elliott & Bundy, Bristol, VA, argued (Mark M. Lawson, on brief), for defendant-appellant Wiley.

Jeffrey Alan Fleischhauer, Bird, Kinder & Huffman, P.C., Roanoke, VA, argued (Donald W. Huffman, Kenneth J. Lasky, on brief), for plaintiff-appellee Jamison.

Scott Ramsey McIntosh, Civil Div., U.S. Dept. of Justice, Washington, DC, argued (Stuart M. Gerson, Asst. Atty. Gen., E. Montgomery Tucker, U.S. Atty., Barbara L. Herwig, on brief), for plaintiff-appellee U.S.

Before PHILLIPS, NIEMEYER, and WILLIAMS, Circuit Judges.

## OPINION

PHILLIPS, Circuit Judge:

Jerry Wiley, a federal employee, appeals the district court's refusal to substitute the United States for him as defendant in a removed state tort action brought against him by one of his subordinates, as well as its subsequent decision to remand the action to state court, 794 F.Supp. 587. We hold that the district court properly refused to substitute the United States as defendant, but that it erred in relinquishing jurisdiction and remanding the case to state court. We there-

fore reverse the order of remand and direct the district court to exercise jurisdiction over the case.

### I.

This case presents a number of interrelated jurisdictional and procedural issues respecting the scope and operation of the immunity and removal provisions of the Westfall Act, 28 U.S.C. §§ 2679(b) and (d), in conjunction with the general federal officers removal statute, 28 U.S.C. § 1442(a)(1), as well as the jurisdiction of this court over appeals from orders of substitution and remand entered in the course of applying those immunity and removal provisions. Because operation of the Westfall Act's provisions are of central importance to an understanding of the specific issues presented, we summarize them at the outset of our statement of the factual background and procedural history of the case as it has come to us.

### A.

The Federal Employees Liability Reform and Tort Compensation Act, commonly known as the Westfall Act, was passed in response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988), which significantly narrowed the scope of the absolute immunity that federal employees had traditionally enjoyed for common law torts committed within the scope of their employment. Before 1988, it was widely understood that federal employees were absolutely immune from personal liability for common law torts committed while they were acting "within the outer perimeter of [their] line of duty." *See, e.g., General Elec. Co. v. United States*, 813 F.2d 1273, 1277 (4th Cir.1987), *citing Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959) (plurality opinion). In *Westfall*, however, the Supreme Court held that such immunity is not avail-able unless the challenged conduct is *both* within the outer perimeter of the employee's official duties *and* "discretionary in nature." 484 U.S. at 298, 108 S.Ct. at 584. This meant that federal employees were now exposed to personal liability for any common law torts committed in the course of their official duties, unless they could show they were exercising governmental discretion at the time of the conduct in question.

The Court in *Westfall* recognized that by introducing into the doctrine of official immunity such an inquiry into the "discretionary" nature of the challenged conduct—similar to the one that had bedeviled courts for years in litigation under the Federal Tort Claim Act (FTCA)[1]—it was not only creating the potential for considerable complexity, but also making it difficult for federal employees to obtain dismissals based on official immunity at the summary judgment stage or earlier. *Id.* at 299–300, 108 S.Ct. at 585. It therefore expressly invited Congress to establish "[l]egislat[ive] standards" to define the scope of the official immunity available to "federal employees involved in state-law tort actions." *Id.* at 300, 108 S.Ct. at 585.

Congress promptly responded by passing the Westfall Act, which "establish[es] legislative standards to govern the immunity of Federal employees who have allegedly committed state common law torts." *See* H.R.Rep. No. 100–700, 100th Cong., 2d Sess. 4, *reprinted in* 1988 U.S.Code Cong. & Admin.News 5945, at 5947 (1988). As the Act's legislative history reveals, Congress' primary concern was that the *Westfall* decision would expose federal employees—particularly low-level "rank and file" employees who exercise little discretion in carrying out their duties—to unprecedented personal liability, with predictable adverse consequences for the routine administration of the government's business. *Id.* at 5946–47; *see* Pub.L. No. 100–694, § 2(a) (*Westfall* decision has "seriously erod-

---

1. The FTCA, which generally waives the United States' sovereign immunity with respect to state-tort actions against it for injuries caused by the negligence of its employees acting within the scope of their employment, 28 U.S.C. § 1346(b), contains a provision expressly excepting from that limited waiver of sovereign immunity all claims based on the discretionary acts or omis-sions of federal employees. 28 U.S.C. § 2680(a). The courts have struggled for years to define the scope of this so-called "discretionary function" exception to the FTCA. *See generally* 14 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure:* Jurisdiction 2d § 3658 (1985) at 337–45.

ed the common law tort immunity previously available to Federal employees" and "created an immediate crisis involving the prospect of personal liability and the threat of protracted personal tort litigation for the entire Federal workforce," which threatens to "seriously undermine the morale and well being of Federal employees, impede the ability of agencies to carry out their missions, and diminish the vitality of the Federal Tort Claims Act"). The Act's stated purpose therefore was to "protect Federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States." *Id.* § 2(b).

The centerpiece of the Act was § 5, which amended the FTCA to provide that an FTCA action against the United States is the sole remedy for any injury to person or property caused by the negligent or wrongful acts of a federal employee "acting within the scope of his office or employment," "exclusive of any other civil action or proceeding for money damages ... against the employee whose act or omission gave rise to the claim." 28 U.S.C. § 2679(b)(1). The purpose of this "exclusive remedy" provision was to give fed-

eral employees an absolute immunity from common law tort actions that was functionally equivalent to—if not perfectly congruent with[2]—the immunity that they had enjoyed under the common law doctrine of *Barr v. Matteo* before the *Westfall* decision. H.R.Rep. No. 100–700, *supra,* at 5947 ("The functional effect of [the Act] is to return Federal employees to the status they held prior to the *Westfall* decision").

Section 6 of the Act contained several procedural provisions designed to implement the absolute immunity created by section 5. It authorizes the Attorney General to issue what has come to be called a "scope certification"—a certification that "the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1)–(2).[3] If the Attorney General issues such a scope certification with respect to an action brought against a federal employee in federal court, the action "shall be deemed" to be an action against the United States under the FTCA, and the United States "shall be substituted as the party defendant." *Id.* § 2679(d)(1). If the Attorney General issues a scope certification with respect to an action brought against a federal employee in state court, the action "shall be

**2.** The scope of the absolute immunity created by the Westfall Act's "exclusive remedy" provision is not exactly the same in literal terms as the scope of the absolute immunity available under the pre-*Westfall* common law doctrine as defined in the *Barr v. Matteo* line of cases leading up to the *Westfall* decision. Whereas the pre-*Westfall* common law immunity cases had defined the immunity as extending to conduct "within the outer perimeter of [a federal employee's] line of duty," *Barr v. Matteo,* 360 U.S. at 575, 79 S.Ct. at 1341, the Westfall Act defines it as extending to conduct "within the scope of [the employee's] office or employment." 28 U.S.C. § 2679(b)(1). The distinction appeared at first to be of little consequence, since the phrase "within the outer perimeter of the employee's official duties" was often used interchangeably with the phrase "within the scope of his employment" in the common law immunity cases. *See, e.g., Westfall,* 484 U.S. at 293, 295, 297–98, 108 S.Ct. at 582, 583, 584 ("within the scope of ... employment"); *id.* at 300, 108 S.Ct. at 585 ("within the outer perimeter of ... official[] duties"); *id.* at 294, 108 S.Ct. at 582 ("within the scope of ... duties"). It became important only when the lower courts later held that whether particular conduct was "within the scope of employment"

for purposes of Westfall Act immunity was to be determined *not* by reference to a uniform body of federal common law, but by reference to the respondeat superior law of the state in which the conduct occurred. *See Arbour v. Jenkins,* 903 F.2d 416, 421–22 (6th Cir.1990); *Nasuti v. Scannell,* 906 F.2d 802, 805 n. 3 (1st Cir.1990); *S.J. & W. Ranch, Inc. v. Lehtinen,* 913 F.2d 1538, 1542 (11th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991); *Johnson v. Carter,* 983 F.2d 1316, 1322 (4th Cir.) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993).

**3.** The Attorney General has delegated this authority by regulation to the United States Attorneys, who make scope determinations in consultation with the Department of Justice. *See* 28 C.F.R. § 15.3(a) (1993). The Attorney General is authorized to make such a delegation by 28 U.S.C. § 510. The regulation giving the United States Attorneys authority to make scope determinations also specifically authorizes them to withdraw these certifications "if a further evaluation of the relevant facts or the consideration of new or additional evidence calls for such action." 28 C.F.R. § 15.3(a).

removed without bond ... by the Attorney General to the [appropriate] district court of the United States," where it "shall be deemed" to be an action or proceeding against the United States under the FTCA and the United States "shall be substituted as the party defendant." *Id.* § 2679(d)(2). The Act further provides that the Attorney General's certification with respect to an action brought against a federal employee in state court "shall *conclusively* establish scope of office or employment for purposes of removal." *Id.* (emphasis added).

If the Attorney General refuses to issue a scope certification with respect to an action pending in either federal or state court, the Act permits the employee to "petition the court to find and certify that the employee was acting within the scope of his office or employment." *Id.* § 2679(d)(3). If the court so certifies, the action "shall be deemed" to be an action against the United States under the FTCA, and the United States "shall be substituted as the party defendant." *Id.* If the suit is pending in state court at the time the employee files the petition for certification, the Attorney General "may" remove the action to the appropriate district court for resolution of the disputed scope-of-employment issue, but the district court must remand the action to the state court if it finds, in considering the employee's petition for certification, that he was not acting within the scope of his office or employment. *Id.;* see *Gogek v. Brown Univ.,* 729 F.Supp. 926, 930 n. 3 (D.R.I.1990).

### B.

In January 1990, Connie Jamison, an employee of the federal Mine Safety and Health Administration, filed this civil action in Virginia state court against her supervisor, Jerry Wiley, in his individual capacity. Jamison's complaint sought damages, under Virginia's common law of tort, for alleged sexual assault and battery and intentional infliction of emotional distress.[4] Most of the conduct of which Jamison complained was alleged to have occurred in the federal work place during working hours.

The United States Department of Justice initially agreed to undertake Wiley's representation, pursuant to federal statutory and regulatory provisions that authorize it to defend federal employees who are sued in tort for acts within the scope of their employment. *See* 28 U.S.C. § 2679(c); 28 C.F.R. § 50.15 (1993). On Wiley's behalf, the United States Attorney for the Western District of Virginia removed the action to federal court, invoking in his notice both 28 U.S.C. § 1442(a)(1), which authorizes a federal officer to remove any civil or criminal action brought against him for any act under color of his office, and the removal provision of the Westfall Act, 28 U.S.C. § 2769(d)(2). Notice of Removal ¶¶ 3–7. With the notice of removal, the United States Attorney filed a request for substitution of the United States as the sole party defendant, pursuant to the Westfall Act, together with an appropriate certification that the events giving rise to the action had occurred within the scope of Wiley's federal employment. Shortly thereafter, the district court entered an order substituting the United States for Wiley as the sole party defendant, as it was required to do by 28 U.S.C. § 2769(d)(2).

Jamison moved the district court for reconsideration of its order of substitution, contending that the conduct of which she complained had not occurred in the scope of Wiley's federal employment.[5] While that motion was pending before the district court, a panel of this Court decided *Johnson v. Carter,* 939 F.2d 180 (4th Cir.1991), which held that while a Justice Department scope certification is conclusive under the Westfall

---

**4.** Jamison alleged that between August 1987 and March 1988, while Wiley was serving as her supervisor, he had made unwanted sexual advances toward her. Motion for Judgment ¶ 4. She also alleged that during the same period, he had "continually harassed [her] on the job," by smoking in her presence despite her allergy to smoke, listening in on her personal telephone calls, criticizing her work unjustly, and following

her around town when she was on her own time. *Id.* ¶ 5.

**5.** Jamison's motion indicated that she preferred to proceed against Wiley himself, rather than the United States, because she thought the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h), would preclude any recovery against the United States under the FTCA. *See* JA 89.

Act for purposes of removal, it is subject to judicial review for purposes of substitution. 939 F.2d at 183 n. 5.[6]

On August 16, 1991, the district court issued an order vacating its initial order of substitution as "improvident[ ]" and announcing that it would conduct its own independent inquiry into the scope-of-employment issue for purposes of substitution, as it was authorized to do by the panel decision in *Johnson.* Though the court's order reinstated Wiley as the named defendant, it made clear that it was not making a final ruling on the substitution question at that time. The court explained that while some of Wiley's alleged misconduct was obviously outside the scope of his employment under applicable law, it could not determine whether the rest of it was without further "factual inquiry." The court therefore scheduled an evidentiary hearing "to determine whether any of the acts alleged were within the scope of Wiley's employment."

Before this evidentiary hearing was held, the Justice Department undertook its own independent review of the case to determine whether its continued representation of Wiley was appropriate under 28 C.F.R. §§ 50.-15(b)(1) and (b)(2), which forbid the Justice Department to represent federal employees in cases where the conduct giving rise to the suit "does not reasonably appear to have been performed within the scope of his employment with the federal government" or the Justice Department determines that such representation "is not in the interests of the United States." The Justice Department decided that its initial decision to afford Wiley representation had been "improvident" and moved to withdraw as his counsel. The district court granted the government's motion to withdraw in October of 1991.

In December 1991, the district court held the evidentiary hearing called for in its order of August 16, 1991. At that hearing, the court heard testimony from both Jamison and Wiley. On cross-examination, Wiley ad-

mitted to, among other things, putting his hand up Jamison's skirt, running his finger over her bare stomach, snapping her bra, and blowing smoke in her eyes.

On April 20, 1992, the Justice Department notified the district court that it was formally withdrawing its earlier certification that Wiley had been acting within the scope of his employment, as it was authorized to do by its own regulation implementing the Westfall Act, 28 C.F.R. § 15.3(a). The Justice Department's notice stated that its withdrawal of certification was based on "further evaluation of the relevant facts and the consideration of new and additional evidence," but did not specify what that additional evidence was.

Ten days later, on April 30, 1992, the district court issued an order remanding the action to state court. In an accompanying memorandum opinion the district court found, based on the evidence produced at the evidentiary hearing and the Justice Department's subsequent withdrawal of certification, that "the acts at issue were not within the scope of Wiley's employment, that the withdrawal of certification was appropriate, and that the case should be remanded to the state court." [7]

Wiley filed a timely notice of appeal from the order of April 30, 1992. On appeal, he challenges the district court's ruling that he was not entitled to have the United States substituted for him as defendant, as well as its subsequent decision to remand this case to state court.

## II.

At the outset, we must address Jamison's argument that we lack jurisdiction to entertain any portion of Wiley's appeal. Jamison contends that we lack jurisdiction to review the district court's ruling on the substitution question, because Wiley failed to file a timely notice of appeal from the district court's or-

---

**6.** This aspect of the panel decision in *Johnson* was later rejected by the en banc court. *Johnson v. Carter,* 983 F.2d 1316, 1320–21 (4th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993). The en banc decision in *Johnson* was not handed down until January of 1993, some

eight months after the district court issued the order under review here.

**7.** The court issued a corrected memorandum opinion to the same effect on May 4, 1992.

der of August 16, 1991, which re-substituted him as the named defendant. She then argues that 28 U.S.C. § 1447(d), which generally forbids review of orders of remand, deprives us of jurisdiction to review any part of the order of April 30, 1992, from which Wiley did file a timely notice of appeal.[8] She therefore concludes that we must dismiss Wiley's entire appeal for lack of appellate jurisdiction.

We disagree, being satisfied that we have jurisdiction to review both the district court's ruling on the substitution issue and its remand order.

## A.

■ We take first Jamison's argument that Wiley's failure to file a timely notice of appeal from the August 16, 1991 order of resubstitution somehow deprives us of jurisdiction to review the district court's ultimate decision on the substitution question. The argument is that the August 16 order of resubstitution was immediately appealable, and that when Wiley failed to file a timely notice of appeal from it, he thereby forfeited his right to all appellate review of the district court's holding on the substitution issue. We disagree.

■ In the first place, we do not think the August 16, 1991 order of resubstitution was immediately appealable. As Jamison concedes, it was not a "final judgment" in the traditional sense, because it did not terminate the action or any part of it. Though Jamison contends that it was immediately appealable under the collateral order doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), because it finally denied a claim of absolute immunity under the

Westfall Act, we cannot agree. The order does not meet the first—and most fundamental—requirement for appealability under *Cohen*, because it did not "conclusively determine" the issue in dispute: whether Wiley was entitled to have the United States substituted for him as defendant. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988). In that order, the district court announced that it would follow the panel decision in *Johnson v. Carter* and conduct its own independent review of the scope-of-employment issue for purposes of substitution. It therefore vacated its earlier order substituting the United States for Wiley, which had been entered solely on the basis of the Attorney General's scope certification, and directed that an evidentiary hearing be held to determine whether Wiley had in fact been acting within the scope of his employment. Though the district court also directed that Wiley be resubstituted as the named defendant, it made clear that its decision to do so was a tentative one, made only to return things to the status quo at the time of removal, and that it might well change its mind and resubstitute the United States after the evidentiary hearing.[9] Such a tentative and preliminary ruling on a disputed issue, which plainly holds open the prospect of reconsideration and alteration by the district court itself, is not sufficiently "final" to be appealable under the collateral order doctrine. *See Schrob v. Catterson*, 967 F.2d 929, 936–38 (3d Cir.1992) (order tentatively denying motion for substitution under the Westfall Act, pending further discovery and evidentiary hearing, not sufficiently "final" to be appealable under the *Cohen* doctrine); *see also* 15A C. Wright, A. Miller & E. Cooper, *supra*, § 3911.1, at 372 & n. 4.[10]

8. Jamison also argues that portions of this appeal are moot. Brief at 10–11. We have considered this argument and find it to be wholly without merit.

9. Had the court intended its August 16 order of resubstitution to finally resolve the issue of substitution, there would have been no need for it to hold an evidentiary hearing on the scope-of-employment issue, because that issue was relevant only to the issue of substitution. As the court recognized, JA 99, the Westfall Act specifically provides that the Attorney General's scope certi-

fication is conclusive for purposes of *removal*. 28 U.S.C. § 2679(d)(2). Accordingly, the *only* conceivable reason for the district court to have scheduled an evidentiary hearing on the scope-of-employment issue was to aid its resolution of the substitution question, which, at the time, had been held by the later-vacated panel decision in *Johnson* to be judicially-reviewable.

10. An order that *conclusively* denies a federal employee's request for substitution of the United States as defendant under the Westfall Act is a different matter. It is appealable under the col-

Because the district court's August 16, 1991 order of resubstitution was not immediately appealable, Jamison's argument that Wiley forfeited his right to appellate review of the substitution ruling by failing to file a timely notice of appeal from that order must fail.[11] The district court did not make a final ruling on the substitution question until the order of April 30, 1992, from which Wiley did file a timely notice of appeal. Whether we have jurisdiction to review the district court's ruling on the substitution question thus depends on whether we have jurisdiction to review that order. It is to that question that we now turn.

### B.

Jamison argues that 28 U.S.C. § 1447(d) bars us from reviewing the April 30, 1992 order. Section 1447(d) provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," subject to an exception for civil rights cases which is not applicable here. Jamison contends that the April 30, 1992 order was such "a remand order and nothing more," and that § 1447(d) therefore precludes its review. Again, we disagree.

First off, Jamison's suggestion that the order of April 30, 1992 was "a remand order and nothing more" is wrong. The memorandum opinion that accompanied the order made it clear that the district court was ruling not only that the case should be re-

manded to state court, but also—and preliminarily—that Wiley was not entitled to have the United States substituted for him as defendant under the Westfall Act, because the acts in question were not within the scope of his federal employment under Virginia law. The order of April 30, 1992 thus embodied two separate rulings: a determination that Wiley was not entitled to have the United States substituted for him as defendant under the Westfall Act, and a determination that the case should therefore be remanded to state court. We are satisfied that § 1447(d) does not prevent our reviewing either aspect of that order.

In the first place, we do not think that § 1447(d) prevents us from reviewing the portion of the April 30, 1992 order that remanded this action to state court. On its face, § 1447(d) appears to preclude appellate review of *all* remand orders, regardless of basis. But as we all know, the Supreme Court has declined to give § 1447(d) such a literal meaning, holding instead that it insulates from review *only* those remand orders that are based on grounds specified in 28 U.S.C. § 1447(c). *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 346, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976) ("only remand orders issued under § 1447(c) and invoking the grounds specified therein ... are immune from review under § 1447(d)"). Section 1447(c) mentions only two grounds for remand: a defect in removal procedure and a lack of subject matter jurisdiction in the federal court.[12] The order of remand in

---

lateral order doctrine because it is essentially a denial of a claim of absolute immunity. *See infra* p. 233–34; *Mitchell v. Carlson*, 896 F.2d 128, 133 (5th Cir.1990); *cf. Nixon v. Fitzgerald*, 457 U.S. 731, 741–43, 102 S.Ct. 2690, 2696–97, 73 L.Ed.2d 349 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2571–75, 86 L.Ed.2d 411 (1985).

11. Even if Wiley had been entitled to take an interlocutory appeal from the August 16, 1991 order of resubstitution under *Cohen*, his failure to do so would not forfeit his right to appellate review of the rulings made in that order on timely appeal from a later appealable order that subsumed those rulings. The *Cohen* doctrine permits parties to take appeals from a particular class of interlocutory orders; it does not compel such appeals at peril of forfeiture for all time of the right to have rulings embodied in those orders reviewed. *See Schwarz v. Folloder*, 767 F.2d

125, 129 n. 4 (5th Cir.1985); *Hunter v. Department of Air Force*, 846 F.2d 1314, 1316 (11th Cir.1988) (such a rule of forfeiture " 'would turn the policy against piecemeal appeals on its head,' " by encouraging parties to "appeal immediately every order ... that even remotely could be conceived as falling within ... *Cohen* ") (*quoting In re Chicken Antitrust Litigation*, 669 F.2d 228, 236 (5th Cir. Unit B 1982)).

12. At the time of the *Thermtron* decision, § 1447(c) authorized remand of any cases removed "improvidently and without jurisdiction." 28 U.S.C. § 1447(c) (1982). In 1988, the statute was amended to authorize remand on the basis of either a "defect in removal procedure" or the lack of "subject matter jurisdiction" in the federal court. Pub.L. 100–702, § 1016, 102 Stat. 4670 (codified at 28 U.S.C. § 1447(c) (1990)). The amended version of the statute applies here,

question here cannot fairly be characterized as one that was based on either of these grounds.

Neither the order of remand itself nor the accompanying memorandum opinion ever mentions § 1447(c) or its critical terms. Such a failure to specifically invoke the "magic words" of § 1447(c) is, of course, not fatal to application of § 1447(d). *See Kolibash v. Committee on Legal Ethics of W. Va. Bar*, 872 F.2d 571, 573 (4th Cir.1989) (district court "is not required to invoke the specific language of § 1447(c)" in order to implicate § 1447(d)'s ban on review) (citing *Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977)). But we have never applied § 1447(d) when the district court has failed to specifically mention either § 1447(c) or its magic words, absent some clear indication in the record that the district court nonetheless intended—rightly or wrongly—to remand on one of the grounds listed therein. *Compare Three J Farms, Inc. v. Alton Box Board Co.*, 609 F.2d 112, 115–16 (4th Cir.1979) (applying § 1447(d) where district court's order of remand "clearly determined that there was an absence of federal jurisdiction and . . . that the case ha[d] been 'removed improvidently' "), *cert. denied*, 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980), *with Kolibash*, 872 F.2d at 573 (declining to apply § 1447(d) to remand order where court did not "pose the propriety of remand in the terms of [1447(c)]" and "did not apply the § 1447 standard"). *See also Commonwealth v. V & M Management, Inc.*, 929 F.2d 830, 832–33 (1st Cir.1991) (declining to apply § 1447(d) where no evidence that district court based its remand order on a § 1447(c) ground); *Karl Koch Erecting Co., Inc. v. New York Convention Center Dev. Corp.*, 838 F.2d 656, 658 (2d Cir.1988) (declining to apply § 1447(d) where district court in remanding "neither mentioned Section 1447(c) nor questioned the jurisdiction or propriety of [the] removal"). We find no such evidence here.

■ There is no evidence in the record to suggest that the district court based its decision to remand on a perceived defect in removal procedure, and Jamison does not contend that there is. What she does contend is that the district court based its order of remand on a perceived lack of subject matter jurisdiction, but we find no evidence of that either. Neither the April 30, 1992 order nor the accompanying memorandum opinions ever mention either "jurisdiction"— or lack thereof—at all. Jamison contends that the court's inquiry into the scope-of-employment issue was "a fundamental inquiry into its own jurisdiction," Brief at 14, but this assertion cannot be squared with the district court's repeated statements that the source of its removal jurisdiction was the federal officer removal statute, 28 U.S.C. § 1442(a)(1), rather than the removal provision in the Westfall Act.[13] Instead, we think

---

but the change in language has no effect on this case.

**13.** The United States removed the action to federal court on the basis of the general federal officer removal statute, 28 U.S.C. § 1442(a)(1), as well as the separate removal provision in the Westfall Act. Removal Petition ¶¶ 3–7. The district court plainly believed that the source of its removal jurisdiction was § 1442(a)(1), rather than the Westfall Act: it stated repeatedly that "[t]h[is] action was removed to this court pursuant to 28 U.S.C. § 1442," and it never referred to the Westfall Act as the source of removal jurisdiction. *See* JA 98 (opinion and order of August 16, 1991), 173 (memorandum opinion accompanying order of April 30, 1992), 178 (corrected version of same opinion).

Because the district court believed § 1442(a)(1) to be the source of its removal jurisdiction, its inquiry into the scope-of-employment issue cannot fairly be interpreted as an inquiry into its own jurisdiction. Unlike the removal provision in the Westfall Act, § 1442(a)(1) does not condition the right to removal on a finding, either administrative or judicial, that the defendant acted within the scope of his federal employment; instead, it permits "[a]ny officer of the United States, or any . . . person acting under him," to remove any action brought against him in a state court "for any act *under color of such office.*" 28 U.S.C. § 1442(a)(1) (emphasis added). The district court made no express finding that Wiley was not acting under color of his office for purposes of § 1442(a)(1), and it gave no indication that it thought—rightly or wrongly—that such a finding was implicit in its holding that Wiley was not acting within the scope of his employment for purposes of Westfall Act substitution. *Compare Mitchell v. Carlson*, 896 F.2d at 131–32 & n. 3 (section 1447(d) applied to bar review of remand order in Westfall Act case, where district court expressly stated that it was remanding because it believed—albeit erroneously—that it lacked jurisdiction over the removed action).

the record below, fairly read, makes quite clear that the district court was remanding not because it believed it lacked jurisdiction over the removed action, but because it thought it had discretion to decline to exercise that jurisdiction once it decided that the United States was not the proper defendant and thus that there was no FTCA claim in the case. Such a discretionary remand of state-law claims that are properly within the federal removal jurisdiction is not a remand on a § 1447(c) ground that is insulated from appellate review by § 1447(d). *See Kolibash,* 872 F.2d at 573 (section 1447(d) does not bar appellate review of remand order which was not based on a perceived lack of jurisdiction or defect in removal procedure, but instead "represented a discretionary decision by the district court not to hear a certain case on grounds of public policy"); *see also V & M Management,* 929 F.2d at 833; *Rothner v. City of Chicago,* 879 F.2d 1402, 1406–07 & n. 5 (7th Cir.1989); *J.O. v. Alton Community Unit School Dist. 11,* 909 F.2d 267, 270 (7th Cir.1990).

We therefore conclude that § 1447(d) does not prevent our reviewing the portion of the order of April 30, 1992 that remanded this action to state court. *See Thermtron,* 423 U.S. at 345–46, 96 S.Ct. at 590; *Kolibash,* 872 F.2d at 573.

Nor do we think § 1447(d) prevents us from reviewing the portion of the April 30, 1992 order that finally resolved the issue of substitution under the Westfall Act. The Supreme Court has made clear that § 1447(d)'s bar on appellate review does not extend to decisions that precede an order of remand, both "in logic and in fact," even when those decisions create the circumstances which give rise to the decision to remand. *See Waco v. United States Fidelity & Guar. Co.,* 293 U.S. 140, 143, 55 S.Ct. 6, 7, 79 L.Ed. 244 (1934). *See generally* 1A J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 0.169[2.–2] (1993) at 702–03. Relying on *Waco,* the Fifth Circuit recently held that while § 1447(d) prevented it from reviewing a district court order that remanded a Westfall Act case to state court, because that order of remand was expressly—albeit erroneously—based on the conclusion that the

court lacked jurisdiction over the case, § 1447(d) did not prevent it from reviewing a portion of the same order that vacated an earlier order substituting the United States as defendant under the Westfall Act and resubstituted the employee as defendant. *Mitchell v. Carlson,* 896 F.2d 128, 132–33 (5th Cir.1990). As the court explained:

> [T]he resubstitution order … is separable from the remand order and may be subject to review on appeal. The district court dismissed the United States as a defendant and resubstituted [the employee] while it still had control of the cause. Only then did the court remand the case to state court…. Thus, the resubstitution order being prior to and separable from the remand order, § 1447(d) does not bar us from review of the resubstitution order.

*Id.*

We think the present case is indistinguishable from *Mitchell,* insofar as the effect of § 1447(d) on the appealability of the order of resubstitution is concerned. The district court decided that Wiley was not entitled to have the United States substituted for him as defendant in this action *before* it decided to remand the case to state court, while it still had control of the case. That decision, which was made prior to, and is separable from, the decision to remand, is not subject to the limitations of § 1447(d). *See Mitchell,* 896 F.2d at 132–33; *Waco,* 293 U.S. at 143, 55 S.Ct. at 7. Accordingly, independently of any question of the appealability of the remand portion of the April 30, 1992 order, § 1447(d) does not prevent our reviewing the substitution ruling embodied in that order.

### C.

There remains one final question: the source of our jurisdiction to review the April 30, 1992 rulings on substitution and remand once we have determined that § 1447(d) does not act as an independent bar to review of either. The order in which they were embodied was not a "final judgment" in the traditional sense of the term, since it did not actually terminate the action or any part thereof, but simply sent it back to the state court from which it came. *See Thermtron,* 423 U.S. at 352–53, 96 S.Ct. at 593–94 (order

remanding entire case to state court from which it has been removed is not a final judgment reviewable by appeal). But the portion of that order that held that Wiley was not entitled to have the United States substituted for him as defendant under the Westfall Act, unlike the earlier order of re-substitution, *was* appealable under *Cohen,* because it finally and conclusively denied a claim of absolute immunity. *See Mitchell v. Carlson,* 896 F.2d at 133. We need not decide whether the scope of that interlocutory appeal would properly encompass the district court's subsequent ruling that the case should be remanded to state court, because *Thermtron* indicates that our only power to review such a remand order is through a petition for a writ of mandamus, as opposed to a direct appeal under 28 U.S.C. § 1291. 423 U.S. at 352–53, 96 S.Ct. at 593–94. We will therefore treat Wiley's effort to take a direct appeal from the order of remand as a petition for a writ of mandamus, which we may entertain subject to the normal limitations on mandamus relief. *See J.O.,* 909 F.2d at 271; *Rothner,* 879 F.2d at 1418.

To sum up, we conclude that we have jurisdiction to review both the district court's ruling that Wiley is not entitled to have the United States substituted for him as defendant and its subsequent order of remand. Our review of the district court's ruling on the substitution issue is by direct appeal; our review of the remand order by writ of mandamus.

### III.

We turn now to the merits of Wiley's appeal. Wiley contends that the district court erred both in refusing to substitute the United States for him as defendant and in deciding to remand the case to state court. We take these in turn.

### A.

Wiley contends that the district court erred in refusing to substitute the United States for him as defendant for three basic reasons. We find no merit in any of these arguments.

(1)

Wiley's principal argument is that the Justice Department's initial certification that he was acting within the scope of his employment conclusively established that he was entitled to have the United States substituted for him as defendant under the Westfall Act; and that the Department could not thereafter withdraw the certification, nor could the district court in effect undo it by a contrary fact-finding. He relies on the fact that 28 U.S.C. § 2679(d)(2) provides that "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment, ... the United States *shall* be substituted as the party defendant." (emphasis added). He maintains that this provision not only required the district court to substitute the United States for him as defendant upon the Justice Department's issuance of its scope certification, but also conclusively resolved the matter of substitution, depriving both the Justice Department and the court of all power to reconsider the matter. We disagree.

■ First off, we reject Wiley's suggestion that the Westfall Act does not permit the Justice Department to withdraw a scope certification once it has been issued. The Justice Department regulation implementing the Westfall Act specifically authorizes such withdrawals by the United States Attorneys "if a further evaluation of the relevant facts or the consideration of new or additional evidence calls for such action." 28 C.F.R. § 15.3(a). Wiley has pointed to nothing in the Westfall Act that casts doubt on the validity of this regulation, and we find it inconceivable that Congress could have intended to give the Justice Department power to issue scope certifications that have the effect of irretrievably exposing the Government to financial liability, without also giving it the concomitant authority to withdraw any it discovers have been issued in error. We conclude that the Justice Department may withdraw previously-issued scope certifications in accordance with the provisions of 28 C.F.R. § 15.3(a), and that the withdrawal here was authorized under that regulation.

We also reject Wiley's fall-back argument that the district court was required to accord the Justice Department's initial scope certification conclusive effect for purposes of substitution, even after it was withdrawn. On first blush, such a conclusion might be thought to follow from our decision in *Johnson*, which held that a certification from the Justice Department conclusively establishes scope of employment for purposes of Westfall Act substitution. 983 F.2d at 1319–21. But we did not hold in *Johnson* that a scope certification remains conclusive for purposes of Westfall Act substitution even after it has been withdrawn by the Justice Department; that issue was not presented by the facts of *Johnson*, as the scope certification at issue there had not been withdrawn, and any language in *Johnson* that suggests such a result must necessarily be regarded as dicta.

■ Addressing the issue squarely for the first time here, we hold that a scope certification from the Justice Department remains conclusive for purposes of Westfall Act substitution only so long as it remains in effect, and that it ceases to have conclusive effect—at least for purposes of such substitution [14]—once it has been withdrawn by the Justice Department itself. Section 2679(d)(2)'s statement that "[u]pon certification by the Attorney General ..., the United States *shall* be substituted as the party defendant" requires the district court to substitute the United States as defendant, without further inquiry, upon the Justice Department's issuance of a scope certification. But it cannot fairly be read to deprive the district court of authority to revisit the substitution issue if the Justice Department itself later withdraws that scope certification. Such a reading of the statute would be manifestly inconsistent with the fundamental premise of *Johnson*: that Congress intended the federal courts to defer to the Justice Department on the question of when a suit against a federal

employee should be converted into a suit against the United States that exposes the federal treasury to financial liability. The withdrawal expresses the Justice Department's view that the United States is not the proper defendant in the action, and it would violate the very principle of deference upon which § 2679(d)(2) is based to require the federal courts to hold the United States to a scope certification that the Justice Department has since determined to be erroneous.

■ We must also reject, however, any suggestion that the Justice Department's withdrawal of certification itself conclusively resolves the scope-of-employment issue for purposes of Westfall Act substitution. The Act expressly provides that "[i]n the event that the Attorney General has refused to certify scope of office or employment," the court may conduct its own independent inquiry into the scope-of-employment issue, for purposes of substitution, if requested to do so by the employee. 28 U.S.C. § 2679(d)(3). We see no basis for distinguishing, for purposes of § 2679(d)(3), between an initial refusal to certify that the employee was acting within the scope of his employment and a decision to withdraw a scope certification previously issued; in both instances, the Justice Department has expressed its view that the United States is not the proper defendant because the employee was not acting in the scope of his employment, and the employee is entitled to have the scope-of-employment issue resolved by the district court if he disagrees.

■ In this case, the Justice Department issued a scope certification initially, but withdrew it before the district court made its final decision that Wiley was not entitled to have the United States substituted for him as defendant. The Justice Department's withdrawal of the scope certification left the district court free to conduct its own indepen-

---

14. It is, however, quite possible that the withdrawal of a scope certification does not give the district court the right to reopen the scope-of-employment issue for purposes of *removal*, as opposed to substitution. Section 2679(d)(2) provides that "[t]he certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal," and removal jurisdiction is normally determined on the basis of facts at the time of the removal, regardless of what happens thereafter. It may well be that these principles in combination require a district court to accord conclusive effect to a Justice Department scope certification, even after its withdrawal, for purposes of *removal*, as opposed to substitution. But that precise issue is not before us in the present case, and we reserve its resolution for another day. *See infra* n. 17.

dent inquiry into the scope-of-employment issue under § 2679(d)(3) for purposes of substitution, if asked to do so by Wiley. While Wiley made no formal request to the court to "find and certify" that he had been acting in the scope of his employment, he did actively oppose Jamison's request to have him reinstated as defendant, both before and after the withdrawal of certification, and we think that sufficient to satisfy § 2679(d)(3). We therefore conclude that the district court did not err in conducting its own independent inquiry into the scope-of-employment issue for purposes of substitution.[15]

(2)

■ Wiley argues next that even if the district court had the authority to conduct an independent inquiry into the scope-of-employment issue in this case, it erred in holding an evidentiary hearing on that issue. We disagree.

The federal courts of appeals have consistently recognized that a district court has the power to hold a limited evidentiary hearing to resolve factual disputes that bear on a scope-of-employment issue properly before it in a Westfall Act case. *See, e.g., Schrob v. Catterson,* 967 F.2d 929, 935–36 (3d Cir. 1992); *McHugh v. University of Vermont,* 966 F.2d 67, 74 (2d Cir.1992); *Brown v. Armstrong,* 949 F.2d 1007, 1011–12 (8th Cir. 1991); *Nasuti v. Scannell,* 906 F.2d 802, 810 (1st Cir.1990). Wiley does not appear to dispute this general proposition; instead, he contends that the district court should not have required him to submit to an evidentiary hearing in this case, because the allegations in Jamison's pleadings made clear that all of the acts of which she was complaining were within the scope of his employment as a matter of law.

Wiley's argument, which ignores or mischaracterizes most of Jamison's complaint, is flatly without merit. In paragraph 4 of the complaint and the corresponding portion of the bill of particulars, Jamison specifically alleges that Wiley committed various acts of sexual harassment. Wiley makes no effort to explain how those alleged acts are "facially" within the scope of his employment under Virginia law; instead, he simply ignores them and concentrates on paragraph 5, which contains allegations of various acts of on-the-job harassment of a non-sexual nature. Even those allegations, however, involve conduct that may or may not be within the scope of employment under Virginia law, depending on the motives behind it. *See Tri–State Coach Corp. v. Walsh,* 188 Va. 299, 304–07, 49 S.E.2d 363, 366–67 (1948) (an employee's torts are within the scope of his employment only if their "ultimate purpose ... is in furtherance of the [employee's] duties and in execution of [his] master's business," as opposed to "aris[ing] wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account"); *Sayles v. Piccadilly Cafeterias, Inc.,* 242 Va. 328, 332, 410 S.E.2d 632, 634 (1991) (same). Because it was not clear from the face of Jamison's pleadings that Wiley's ultimate purpose in committing the acts of non-sexual harassment complained of in paragraph 5 was to further his federal employer's interests, as opposed to his own personal interest in retaliating against Jamison for rejecting his sexual advances, the district court quite properly concluded that it could not decide whether all of the conduct of which Jamison complained involved acts within the scope of Wiley's employment from the face of Jamison's pleadings alone. Accordingly, the district court did not abuse its discretion in holding an evidentiary hearing on the scope-of-employment issue.

(3)

■ Wiley contends finally that the district court's findings on the scope-of-employment issue, even if procedurally correct, were substantively erroneous.

**15.** It is true that the district court vacated its initial order of substitution and held an evidentiary hearing on the scope-of-employment issue prior to the Justice Department's withdrawal of its scope certification. Under our en banc decision in *Johnson,* those actions were improper, because the district court had no authority to conduct its own independent inquiry into the substitution question while the scope certification was outstanding. But those procedural errors were harmless, since the district court did not make its final ruling on the substitution question until after the Justice Department had withdrawn its scope certification.

Wiley concedes that some of the acts of which Jamison complains (e.g., the acts of alleged sexual assault and battery) were not within the scope of his employment, and that the district court properly refused to substitute the United States as defendant with respect to the claims arising out of those acts. But he maintains that other acts of which Jamison complains—in particular, the instances of unfair criticism of her job performance alleged in paragraph 5 of the complaint—*were* within the scope of his employment, and that the district court erred when it failed to sever the claims arising from those acts from the others and substitute the United States as defendant with respect to them. We disagree.

 Whether an employee's action falls within the scope of his employment under the Westfall Act is to be determined according to the rules of respondeat superior of the state in which the wrongful conduct occurred. *Johnson v. Carter*, 983 F.2d at 1322. As the district court recognized and Wiley now concedes, under Virginia law, an act is within the scope of employment only if it is "fairly and naturally incident to [the master's] business, ... done while the servant was engaged upon the master's business and ... done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account." *Sayles*, 242 Va. at 332, 410 S.E.2d at 634 (citing *Tri–State Coach*, 188 Va. at 307, 49 S.E.2d at 367). Applying these principles, the district court found, after hearing the testimony of both Jamison and Wiley, that the acts of non-sexual harassment alleged in paragraph 5 of the complaint were not within the scope of Wiley's federal employment, because they were not done with the intent to further the interests of Wiley's governmental employer, but resulted wholly from his "external, independent, and personal motive" to retaliate against Jamison for rejecting his sexual advances. Wiley has not convinced us that this finding of fact, which depended critically on the district court's as-

sessment of the relative credibility of the witnesses, was clearly erroneous. We therefore conclude that the district court did not err in finding that all of the acts of which Jamison complains were outside the scope of Wiley's federal employment.

### B.

We turn, finally, to the question whether the district court erred in remanding this case to state court. As indicated, the district court remanded the case because it found that the misconduct alleged had not occurred within the scope of Wiley's federal employment and that he was therefore not entitled to have the United States substituted for him as sole defendant under the Westfall Act. Wiley contends that the remand was improper chiefly because the case was properly removed under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), as well as the removal provision in the Westfall Act, and a district court has no authority to remand claims that are properly removed under § 1442(a)(1) simply because it decides that the defendant was not acting within the scope of his employment within the meaning of the Westfall Act. Alternatively, he contends that even if the case had been removed solely under the removal provision in the Westfall Act, the district court was prohibited from remanding even after it decided that he was not acting within the scope of his employment, because the Justice Department had certified, at the time of the removal, that his acts were within the scope of his employment, and the Westfall Act specifically provides that such a certification shall "conclusively establish scope of employment for purposes of removal." 28 U.S.C. § 2679(d)(2).

Wiley's removal petition clearly invoked two separate and alternative removal statutes, both of which authorize removal of cases to federal court even though they could not have been brought there originally: the general federal officer removal provision, 28 U.S.C. § 1442(a)(1), and the more specific removal provision of the Westfall Act, 28 U.S.C. § 2679(d)(2). *See* Notice of Removal ¶¶ 3–7. The two removal provisions, though

often overlapping, are not identical. The first authorizes "[a]ny officer of the United States, or any .... person acting under him," to remove any "civil action or criminal proceeding" brought against him in a state court "for any act under color of such office." 28 U.S.C. § 1442(a)(1). The second, by contrast, authorizes "any employee of the [federal] Government" to remove any "civil action or proceeding for money damages" brought against him in a state court for injury to person or property resulting from his negligent or wrongful conduct, upon a finding, either administrative or judicial, that he was "acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(2); *see id.* § 2679(b)(1). As Wiley points out, he was entitled to have this action remain in federal court if removal jurisdiction existed under *either* of these two alternative provisions.

*See Mitchell,* 896 F.2d at 131–32 n. 3 (recognizing that § 1442(a)(1) provides federal officer named as defendant in a state tort action with a right of removal "separate and apart from" that provided by the removal provision in the Westfall Act); *Nadler v. Mann,* 951 F.2d 301, 306 n. 9 (11th Cir.1992) (same).[16]

 We agree with Wiley that removal was proper under § 1442(a)(1). The Supreme Court has interpreted § 1442(a)(1) as guaranteeing a federal officer the right to remove an action commenced against him in state court when he can allege a "colorable" federal defense to that action "arising out of [his] duty to enforce federal law." *Mesa v. California,* 489 U.S. 121, 133, 109 S.Ct. 959, 966–67, 103 L.Ed.2d 99 (1988). The defendant need not prove that he will actually prevail on his federal immunity defense in order to obtain removal; indeed, "one of the most important reasons for removal is to have the validity of the [federal] defense of official immunity tried in a federal court." *Id.* at 133, 109 S.Ct. at 966, *quoting Willingham v. Morgan,* 395 U.S. 402, 406–07, 89 S.Ct. 1813, 1815–16, 23 L.Ed.2d 396 (1969). In his removal petition, Wiley specifically alleged, as the basis for removal, that Jamison's charges were based on "acts allegedly done by [Wiley] under the color of his office as an employee of [the] United States," while he was "acting within the scope of his employment" as a "Supervisory Coal Mine Safety and Health Inspector for the United States Department of Labor." Notice of Removal ¶ 3, 5. These allegations were sufficient to give rise to a colorable claim of absolute immunity under the Westfall Act, the validity of which Wiley was entitled to have judged by federal standards in a federal district court. *See Willingham,* 395 U.S. at 406–07, 89 S.Ct. at 1815–16; *Kolibash,* 872 F.2d at 575–76.[17] When a case has been

---

**16.** There is no evidence that the removal provision in the Westfall Act was intended to repeal by implication the availability of the general federal officer removal statute in cases where the officer is being sued under state tort law. To the contrary, the Westfall Act's removal provision seems to have been intended to complement that more general provision, by relieving an officer who can obtain a Justice Department scope certification from the obligation to show that he has a colorable federal defense in order to obtain removal.

**17.** Of course, a defendant cannot satisfy *Mesa*'s requirement that he demonstrate a colorable federal defense simply by reciting § 1442(a)'s "color of office" language in his removal petition "if the underlying facts averred, or ... existing on the whole record before the court," make clear that he cannot possibly make out a colorable federal defense. *State v. Ivory,* 906 F.2d 999, 1001 n. 4 (4th Cir.1990); *see Mesa,* 489 U.S. at 133, 109 S.Ct. at 966 (mere allegation, in removal petition, that conduct complained of occurred "while defendant[s] [were] on duty and acting in the course and scope of [their] employment with the [federal government]" was not sufficient to support removal under § 1442(a)(1), where it was clear that defendants "ha[d] not and could not present an official immunity defense to the state criminal prosecutions brought against them"); *Ivory,* 906 F.2d at 1001 n. 4 (same).

But that is not the case here. Unlike *Mesa* and *Ivory,* this is not a case in which it was clear from the underlying facts averred or existing on the record at the time of the removal that the federal employee seeking removal clearly could not present a federal immunity defense to the action being brought against him in state court. Jamison's complaint sought to impose liability upon Wiley under the common law of tort, and Wiley's claim that he was immune from such liability under the Westfall Act was not frivolous, as evidenced by the fact that the Justice Department initially certified that he was, and that the district court itself was unable to resolve the issue without holding an evidentiary hearing. Under these circumstances, it cannot be doubted

properly removed under § 1442(a), the district court may remand it back to state court *only* if it thereafter discovers a defect in removal procedure or a lack of subject matter jurisdiction in the federal court. 28 U.S.C. § 1447(c). Neither basis for remand exists here. Jamison does not contend, nor could she properly do so, that there was any kind of defect in the removal procedure utilized here. Nor is there any basis for concluding that the district court lacked subject matter jurisdiction over the removed action, simply because it determined that Wiley was not acting within the scope of his employment and the United States was therefore not the proper defendant in the action. Under § 1442(a)(1), removal jurisdiction exists whenever the defendant-official asserts, in his removal petition, a "colorable" federal defense to the action. *Mesa,* 489 U.S. at 136–39, 109 S.Ct. at 968–70. By raising a colorable federal defense in his removal petition, the defendant-official transforms the otherwise nonremovable state-law action into one that falls within the federal court's "arising under" jurisdiction. *See id.* at 136–37, 109 S.Ct. at 968–69 (section 1442(a) creates exception to "well-pleaded complaint" rule which makes officer's assertion of federal defense adequate to confer federal question jurisdiction). That the federal court ultimately rejects the federal defense that supported removal under § 1442(a)(1) does not mean that it thereby loses subject matter jurisdiction over the removed action; "the jurisdiction of the federal courts over a properly removed action will not be defeated by later developments in the suit." 14A C. Wright, A. Miller, & E. Cooper, *supra,* § 3739, at 582.

To sum up, this case was properly removed under § 1442(a)(1), because Wiley's removal petition alleged a colorable federal immunity defense. Nothing in the federal removal statutes authorizes the remand of a case that

has been properly removed under § 1442(a)(1) on the ground that the federal employee's immunity defense is later rejected. *See* 28 U.S.C. § 1447(c). Absent such authorization, the district court had no right to decline to exercise jurisdiction over the removed action, and its decision to do so was an error of sufficient magnitude to merit mandamus relief. As we recognized in *Kolibash,* the removal jurisdiction granted by § 1442(a), which is designed to protect federal employees against local prejudice, is mandatory, not discretionary, and a district court has no authority to abstain from the exercise of that jurisdiction on any ground other than the two specified in 1447(c). 872 F.2d at 575 ("discretionary abstention in the context of § 1442(a)(1) removal is ... not available"); *see also Thermtron,* 423 U.S. at 35, 96 S.Ct. at 233 (Congress did not intend "to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute"). Compare *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (when removal jurisdiction is itself discretionary, district court has discretion to remand, rather than dismiss, case when it thinks it appropriate to decline to exercise that discretionary jurisdiction).[18]

## IV.

In conclusion, we hold that we have jurisdiction to review both the district court's final ruling that Wiley's conduct required that the United States not be substituted for him as defendant in this action and the court's order remanding the action to state court; and, on the merits, we affirm the district court's ruling that Wiley, not the Government, was the proper defendant but reverse the court's order remanding the action to state court. Accordingly, we remand

that Wiley's removal petition raised a "colorable" federal immunity defense, which was in turn sufficient to support removal under § 1442(a)(1). *See Kolibash,* 872 F.2d at 575.

**18.** Because we find that removal was proper under 28 U.S.C. § 1442(a)(1), and that the district court erred in refusing to entertain the case on that ground, we need not decide whether a

remand would have been permissible—or indeed required—upon the Justice Department's withdrawal of certification and the district court's subsequent finding that Wiley was not acting within the scope of his employment, had the sole basis for removal been the removal provision in the Westfall Act, 28 U.S.C. § 2679(d).

the action to the district court with directions to exercise jurisdiction over it in such further proceedings as are required.

*SO ORDERED.*