SEA–LAND SERVICES, INC., and Travelers Insurance Company, Petitioners,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Respondent,

and

Haym Ganish, Real Party.

No. 81–7404.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1982.

Decided Aug. 30, 1982.

Frank B. Hugg, San Francisco, Cal., argued, for petitioners; Mark Rader, Magana, Cathcart & Pierry, Wilmington, Cal., Gerald Ansell, Ansell & Ansell, Los Angeles, Cal., on brief.

Joshua Gillelan, Washington, D.C., for respondent.

Before BROWNING, Chief Judge, SWYGERT,[*] and WRIGHT, Circuit Judges.

PER CURIAM:

Sea-Land Services petitions for review of the Benefits Review Board's order affirming the Administrative Law Judge's conclusion that Haym Ganish was covered by the Longshoremen's and Harbor Workers' Compensation Act and entitled to benefits for two work-related injuries.

Sea-Land operates a containerized shipping business from its cargo terminal at Long Beach, California. Sea-Land's terminal compound includes a staging area where longshoremen load and unload ships and truck chassis, a yard where containers are parked, and a shop where mechanized equipment used at the terminal is maintained and repaired.

Ganish is employed primarily as a "diesel" or "power" mechanic to maintain and repair two-axle trailers, called "switchers," used to move cargo and containers within the terminal area, three-axle tractor trucks used to transport cargo over public highways, forklifts used to load and unload cargo, and pickup trucks used to transport workers and tools around the terminal area. In addition, Ganish occasionally inspected land-bound containers for defects that might affect road safety, and checked seabound containers for theft, damage, and the temperature of refrigerated containers. On occasion, Ganish assisted in the repair of containers.

[*] Honorable Luther M. Swygert, Senior Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

Ganish was injured twice, initially while installing a transmission in a three-axle tractor truck, later while removing air tanks from a truck. Sea-Land contends the truck Ganish was repairing when first injured was used only for moving freight to points off the terminal via public highways. Sea-Land also contends Ganish was working on similar equipment when the second injury occurred, though the record is not clear.

Sea-Land concedes the "situs" requirement of Section 3(a) of the Act, 33 U.S.C. § 902(a) is satisfied, but argues Ganish was not "engaged in maritime employment" at the time and therefore did not satisfy the "status" requirement of Section 2(3), 33 U.S.C. § 902(3). *P. C. Pfeiffer Co., Inc. v. Ford*, 444 U.S. 69, 73–74, 100 S.Ct. 328, 332–333, 62 L.Ed.2d 225 (1979); *Perkins v. Marine Terminal Corp.*, 673 F.2d 1097, 1100 (9th Cir. 1982). Sea-Land further concedes the Supreme Court has rejected the theory workers' activity at the moment of injury determines coverage under the Act. *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 276, 97 S.Ct. 2348, 2363, 53 L.Ed.2d 320 (1977).

Neither the Administrative Law Judge nor the Board based coverage upon Ganish's work on three-axle trailer trucks. The ALJ found Ganish to be covered because "a significant amount of his time was spent repairing and maintaining forklifts and other equipment used by longshoremen in loading and unloading containers (and also the two-axle truck tractors which pull the container-bearing chassis *inside* the staging area.)" (Decision and Order of the ALJ at 5) (emphasis in original). The ALJ expressly avoided basing coverage on Ganish's work on the three-axle trucks. The ALJ concluded Ganish was a maritime employee within the meaning of section 2(3) of the Act because of his

    ... direct participation in the employer's longshoring operation. This direct participation included his regular servicing of forklifts and other equipment used by longshoremen, and his inspection of chassis and containers inside the staging area, sometimes while ships were being loaded

and unloaded. *In my judgment these duties serve to distinguish claimant's status from that of any mechanic whose sole function is to service the three-axle over-the-road truck tractors used in this employer's trucking operation.* And claimant having acquired the status of a covered employee based on his direct participation in the employer's longshoring operation, it is not lost because he also performed services on the over-the-road tractors or because there were no ships actually being loaded or unloaded at the time of the injuries involved in this case. (Emphasis added).

The Benefits Review Board correctly identified the basis of the ALJ's decision (13 BRBS____, 422 n.5), and approved it.

■ Employment is "maritime" if it has "a reasonably significant relationship to traditional maritime activity," *Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs*, 644 F.2d 827, 830 (9th Cir. 1981) *quoting Weyerhaeuser Co. v. Gilmore*, 528 F.2d 957 (9th Cir. 1975). Applied to this case, the question is whether the tasks performed by Ganish were "an integral part of the unloading process as altered by the advent of containerization ...." *Northeast Marine Terminal Co., supra*, 42 U.S. at 271, 97 S.Ct. at 2361. *See also Pfeiffer Co. v. Ford, supra*, 444 U.S. at 83, 100 S.Ct. at 337.

■ The repair and maintenance of equipment necessary to loading and unloading ships is integral to the process and is therefore "maritime employment" covered by the Act. *Brady-Hamilton Stevedore Co. v. Herron*, 568 F.2d 137, 139–40 (9th Cir. 1978); *Texports Stevedore Co. v. Winchester*, 554 F.2d 245, 246–47 (5th Cir.), *amended* 561 F.2d 1213 (5th Cir. 1977), *aff'd en banc*, 632 F.2d 504 (5th Cir. 1980); *Price v. Norfolk & W. Ry. Co.*, 618 F.2d 1059, 1061 (4th Cir. 1980); *Prolerized New England Co. v. Benefits Review Board*, 637 F.2d 30, 37–38 (1st Cir. 1980); *Garvey Grain Co. v. Director, Office of Workers' Compensation Programs*, 639 F.2d 366, 370 (7th Cir. 1981); and *Bradshaw v. J. A. McCarthy, Inc.*, 3 BRBS 195 (1976), *pet. for review denied*, 564 F.2d 89 (3d Cir. 1977). *Cf. Graziano v. General Dynamics Corp.*, 663 F.2d 340, 343

(1st Cir. 1981); and *Newport News Ship-building & Dry Dock Co. v. Graham*, 573 F.2d 167, 170 (4th Cir. 1980).

■ The ALJ also relied upon Ganish's assignment to inspect *"incoming* refrigerator containers when they arrived inside the staging area from their inland origins." (Decision and Order of the ALJ at 5–6) (emphasis in original). Ganish's work of plugging-in refrigerated containers, checking container temperatures, checking for damaged containers, and guarding against theft was also an integral part of the loading process. *Kelly v. Director, Office of Workers' Compensation Programs*, 678 F.2d 830 (9th Cir. 1982).

Ganish clearly spent "at least some of [his] time in indisputably longshoring operations." *Northeast Marine Terminal Co., supra,* 432 U.S. at 273, 97 S.Ct. at 2362. We need not determine how small a proportion of the employee's time would be enough, *see Howard v. Rebel Well Service*, 632 F.2d 1348, 1350 (5th Cir. 1980), for in this case the ALJ found on a sufficient record that Ganish's "mechanic's duties, his primary responsibility, were more oriented to an indisputable longshoring operations than to an inland trucking operation...." (Decision and Order of ALJ at 5).

The petition for review is denied.