**Keith A. JOHNSON, Appellant,**

v.

**DULUTH, MISSABE AND IRON RANGE RAILWAY COMPANY, Respondent.**

**No. CX–88–2372.**

Court of Appeals of Minnesota.

March 28, 1989.
Review Denied May 24, 1989.

Patrick S. O'Brien, Pratt & Callis, P.C., East Alton, Ill., Gary J. Halom, Ashley,

Hannula & Halom, Superior, Wis., for Keith A. Johnson.

D. Edward Fitzgerald Hanft, Fride, O'Brien, Harries, Swelbar & Burns, Duluth, for Duluth, Missabe and Iron Range Ry. Co.

Heard, considered and decided by RANDALL, P.J., KALITOWSKI and SCHULTZ,* JJ.

HAROLD W. SCHULTZ, Judge.

Appellant was injured while working at respondent's Two Harbors ore docks and taconite storage facility. This action was brought under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (1986). Respondent moved for summary judgment, contending appellant's sole remedy was that provided by the Longshore and Harbor Workers' Compensation Act. The trial court granted respondent's motion for summary judgment, and Johnson has appealed.[1]

## FACTS

Respondent Duluth, Missabe and Iron Range Railway Company (DM & IR) operates a taconite unloading and loading facility at Two Harbors, Minnesota. Railroad cars are brought from the Iron Range to the facility. They are then unloaded at the facility's train unloading station. Pellets are discharged onto a conveyer system which can move the pellets directly to the ore dock for immediate loading into the holds of vessels or to the storage area. Pellets conveyed to the storage area are placed in storage by a mechanical stacker which runs on tracks on an elevated berm. When taconite from the storage area is to be transferred onto a ship, a machine known as a bucket wheel reclaimer is used. The bucket wheel reclaimer loads the taconite either onto traveling hopper cars or onto the conveyer system of the mechanical stacker, which then conveys the taconite directly to the main conveyer system for transport to the docks and ships.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

1. This case is a companion case of *Wistrom v. Duluth, Missabe and Iron Range Railway Co.,* 437 N.W.2d 730 (Minn.Ct.App.1989).

Johnson was employed by DM & IR as a bridge and building storage facility mechanic at the Two Harbors facility. Johnson's duties included performing bag house repairs and reports, "walking" the conveyor system looking for defective rollers, and occasionally helping to replace rollers on the conveyor system. On the date of his injury, Johnson was assigned to inspect and repair the dust collecting bag house at the train unloading station. While removing a chunk of frozen material from the bag house discharge pipe, Johnson was knocked off balance by a piece of frozen material; he fell from the stepladder on which he was working and was injured.

Johnson filed suit against DM & IR, alleging violations of the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. DM & IR moved for summary judgment or, in the alternative, for dismissal for lack of subject matter jurisdiction. The trial court granted DM & IR's motion for summary judgment, finding appellant's sole remedy was under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950 (1986).

## ISSUE

Was Johnson engaged in "maritime employment" within the meaning of the LHWCA at the time of his injury?

## ANALYSIS

The LHWCA provides the exclusive remedy for a harbor worker injured in the course of his employment. 33 U.S.C. § 905(a). Coverage under the LHWCA is extended to any person

engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker, including a ship repairman, ship-builder and ship-breaker.

*Id.* § 902(3). The personal injury damages for which recovery is provided is limited:

[C]ompensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoin-

ing pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling or building a vessel).

*Id.* § 903(a). An employer is defined:

[A]n employer, any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).

*Id.* § 902(4).

Prior to 1972, coverage under the LHWCA was determined solely by whether or not the situs of the injury was upon navigable waters of the United States. The 1972 amendments were an attempt to insure full-time LHWCA coverage for workers who were engaged in land-to-ship, ship-to-land, or ship-to-ship movement of cargo, regardless of whether or not all duties were performed on navigable waters. *P.C. Pfeiffer Co. v. Ford,* 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979).

Under the 1972 amendments, there is a dual test, consisting of the traditional situs standard and a new employee status standard, for determining whether a worker is covered under the Act. *Id.* at 73, 100 S.Ct. at 332. The parties agree that the situs standard has been met in this case. Therefore, the issue is whether the status standard is met.

The status test defines an employee as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker, including a ship repairman, ship-builder, and ship-breaker." 33 U.S.C. § 902(3). The term "maritime employment" embodies an occupational rather than a geographic concept. *P.C. Pfeiffer Co.,* 444 U.S. at 79, 100 S.Ct. at 335. In determining whether a person is engaged in maritime employment, "the crucial factor is the nature of the activity to

which a worker *may* be assigned." *Id.* at 82, 100 S.Ct. at 337. (emphasis added).

In determining whether someone is engaged in "maritime employment" as that term is used in the LHWCA, it is important to keep in mind the reasons behind the 1972 amendments to the Act. One reason for the expansion of coverage embodied in the 1972 amendments was a recognition that modern cargo-handling techniques had moved much of the longshoreman's work inland. *See Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 262, 97 S.Ct. 2348, 2356, 53 L.Ed.2d 320 (1977). The terms "longshoreman" and "longshoring operations" have been similarly expanded to include more on-shore persons and activities. *Id.* at 264, 97 S.Ct. at 2357. They include people "engaged in the handling of cargo as it moves between sea and land transportation after its immediate unloading." *Id.* at 267–68, 97 S.Ct. at 2358–59.

 An occupation is maritime, within the scope of the LHWCA, if it has a reasonably significant relationship with activities which are traditionally considered maritime. *Sea–Land Services, Inc. v. Director, Office of Workers' Compensation Programs*, 685 F.2d 1121, 1123 (9th Cir.1982); *Duncanson–Harrelson Co. v. Director, Office of Workers' Compensation Programs*, 644 F.2d 827, 830 (9th Cir.1981). Repair and maintenance of machinery, equipment, and facilities used in loading and unloading maritime cargo are traditional maritime functions. *Sea–Land Services, Inc.*, 685 F.2d at 1123.

The purpose of the LHWCA is not to provide coverage for "all those who breathe salt air." *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 423, 105 S.Ct. 1421, 1427, 84 L.Ed.2d 406 (1985). The Supreme Court in *Herb's Welding* held that the LHWCA did not apply to injuries sustained by a welder working on an offshore oil-drilling platform. The court has similarly recognized that the Act does not cover employees whose only responsibility is to pick up stored cargo for further trans-shipment or purely clerical employees whose jobs do not require them to participate in the loading or unloading of cargo. *P.C. Pfeiffer*

*Co.*, 444 U.S. at 79–80, 100 S.Ct. at 335. (quoting Sen.Rep. No. 1125, 13; H.R.Rep. No. 1441, 92nd Cong.2d Sess. 11, *reprinted in* 1972 U.S.Code Cong. & Admin.News 4698, 4708).

 Applying these principles to the present case, the trial court was correct in finding appellant's sole remedy is under the LHWCA. Appellant was engaged in the repair and maintenance of machinery used in traditional maritime activities as that term has come to be defined following the 1972 amendments to the LHWCA. Johnson was injured while repairing or maintaining a facility used in transferring cargo from on-land transportation to maritime transportation.

### DECISION

Johnson's sole remedy is that provided by the LHWCA.

Affirmed.