Filed:  July 28, 1998

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

No. 97-2038(L)
(CA-97-1611-S)

---

In Re: CSX Transportation, Inc.,

Petitioner.

---

O R D E R

---

The court amends its opinion filed July 16, 1998, as follows:

On the cover sheet, section 7, lines 1-2 -- the language is corrected to read:  "Judge Niemeyer wrote the opinion, in which Judge Michael and Judge Friedman joined."

On page 9, second full paragraph, line 16 -- the phrase "(Stevens, J., concurring)" is corrected to read "(Blackmun, J., concurring."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

| | |
|---|---|
| In Re: CSX TRANSPORTATION, INCORPORATED, <u>Petitioner.</u> | No. 97-2038 |

On Petition for Writ of Mandamus.
(CA-97-1611-S)

| | |
|---|---|
| LARRY W. SHIVES, <u>Plaintiff-Appellee,</u><br><br>v.<br><br>CSX TRANSPORTATION, INCORPORATED, <u>Defendant-Appellant.</u> | No. 97-2053 |

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-97-1611-S)

Argued: May 6, 1998

Decided: July 16, 1998

Before NIEMEYER and MICHAEL, Circuit Judges, and
FRIEDMAN, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Vacated and remanded with instructions by published opinion. Judge
Niemeyer wrote the opinion, in which Judge Michael and Judge
Friedman joined.

**COUNSEL**

**ARGUED:** Eric Rawson Harlan, Stephen Bennett Caplis, WHITE-FORD, TAYLOR & PRESTON, L.L.P., Baltimore, Maryland, for Appellant. Perry Matthew Darby, ALBERTINI & DARBY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Guy M. Albertini, Allan B. Rabineau, Theresa A. Rosendale, ALBERTINI & DARBY, Baltimore, Maryland, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

The question presented is whether a worker was engaged, at the time of his work-related injury, in "maritime employment" as defined in the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 902(3), when his job at a marine terminal included the loading and unloading of ships only 15% of the time and when he was unloading <u>non-maritime</u> freight from a train at the time of his injury. Because we hold that the worker was engaged in maritime employment, we vacate and remand to the district court with instructions to dismiss this case, which was brought under the Federal Employers' Liability Act, to permit the administrative process on the worker's pending Longshore Act claim to run its course.

I

Larry W. Shives was injured in August 1996 at the Seagirt Marine Terminal in Baltimore, Maryland, while in the employ of CSX Transportation, Inc. ("CSXT"). Shives was employed as a "carman," a job that required him to inspect train cars and assist in loading and unloading them. The Seagirt Marine Terminal is an intermodal terminal where freight is unloaded from trains onto ships as well as trucks, and vice versa. The parties have stipulated in this case that 15% of the tasks assigned to CSXT's carmen such as Shives involved the loading and unloading of maritime freight. The remainder of the carmen's time was spent on non-maritime transfers of freight from trains to trucks and vice versa.

2

When Shives sustained his injury, he was assisting in the unloading of a flatbed train car that carried UPS trailers. As he unlocked the hitch on the car, he slipped on some oil, twisting his right knee and striking it against the bed of the car. The parties stipulated that the cargo on the train on which Shives was injured was being unloaded onto trucks for inland destinations.

Following his injury, Shives filed a negligence suit against CSXT in Maryland state court under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq. He also filed a protective worker's compensation claim with the Department of Labor under the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq.

Contending that Shives was engaged in maritime employment and therefore entitled only to workers compensation under the LHWCA, CSXT removed Shives' case to federal court under 28 U.S.C. §§ 1441 and 1331. It then moved to dismiss the case to allow Shives' administrative claim to proceed before the Department of Labor. Shives filed a motion to remand the case to the state court, arguing that he was not engaged in maritime employment and thus was entitled to pursue his negligence claim in state court under the FELA.

The district court, recognizing that in order to be covered by the LHWCA, Shives had to satisfy both the situs and status requirements of the Act, held first that Shives' injury occurred at a maritime situs. Pursuant to its status inquiry, however, it concluded that because "none of the containers or other freight carried by the incoming train on which Mr. Shives was working at the time of his accident was destined for transport by a maritime vessel, and . . . only 15% of the daily container traffic handled by the terminal involved cargo from trains being transhipped from boat to train or vice versa," Shives did not meet the status test "as of the time of his injury." Accordingly, the court entered an order granting Shives' motion to remand the case to the state court.

CSXT filed this appeal from the district court's order. Because CSXT was concerned with whether the district court's order was appealable in light of 28 U.S.C. § 1447(d), it also filed a petition for

3

a writ of mandamus to review the district court's order by virtue of our holding in Jamison v. Wiley, 14 F.3d 222 (4th Cir. 1994).

II

At the outset, we must satisfy ourselves on the question of whether we have jurisdiction to review the district court's order in light of 28 U.S.C. § 1447(d) (prohibiting appellate review of remand orders), which is limited by Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 346, 352-53 (1976) ("[O]nly remand orders issued under § 1447(c) and invoking the grounds specified therein -- that removal was improvident and without jurisdiction -- are immune from review under § 1447(d).").

Shives filed this case in state court under the FELA, 45 U.S.C. § 51 et seq., which confers concurrent federal and state jurisdiction over FELA claims. See 45 U.S.C. § 56. But when filed in state court, an FELA claim may not be removed to federal court. See 28 U.S.C. § 1445(a). CSXT claimed that this case was not an FELA claim but rather a claim for federal workers compensation under the LHWCA because Shives was engaged in maritime employment at the time of his injury. It therefore removed this case to federal court under 28 U.S.C. § 1441(b) based on federal question jurisdiction conferred by 28 U.S.C. § 1331. Because the district court concluded that Shives was not engaged in maritime employment at the time of his injury and that therefore he could pursue his FELA claim, it ordered a remand based on 28 U.S.C. § 1445(a) (prohibiting the removal of FELA cases). Not sure how to obtain appellate review of the district court's order, CSXT both filed a notice of appeal and petitioned for a writ of mandamus, relying on Jamison v. Wiley, 14 F.3d 222 (4th Cir. 1994).

While 28 U.S.C. § 1291 confers jurisdiction on the courts of appeals "from all final decisions of the district courts," the removal statute prohibits appellate review of district courts' orders "remanding a case to the State court from which it was removed." 28 U.S.C. § 1447(d). In Thermtron, however, the Supreme Court limited the application of § 1447(d), holding that § 1447(d) only restricted appellate review of remand orders based on § 1447(c) -- a provision addressing remands where a removal was improvident or the district court was without subject matter jurisdiction. See 423 U.S. at 346; see

4

also Jamison, 14 F.3d at 231-32. Absent the proscription of § 1447(d), it would appear that an order remanding a case to state court puts the litigants out of federal court, effectively ending the federal case, and therefore is a final order appealable under § 28 U.S.C. § 1291. See Quackenbush v. Allstate Ins. Co., 116 S. Ct. 1712, 1719 (1996).

In this case, the district court could not rule, in a strict sense, under § 1447(c) that it was without jurisdiction because federal courts have concurrent jurisdiction over FELA claims. See 45 U.S.C. § 56. Rather, it ruled properly that an FELA claim could not be removed from a state court to a federal court. See 28 U.S.C. § 1445(a). Moreover, its ministerial application of § 1445(a) depended on its substantive ruling that Shives was not engaged in maritime employment. This determination is probably not of the type of ruling included in 28 U.S.C. § 1447(c), see Jamison, 14 F.3d at 232, and therefore prohibited by § 1447(d). This conclusion, however, is not entirely without doubt.

It is clear that the remand order presented to us for review does not play the typical rerouting role of directing non-federal cases back to state court. The question of whether the LHWCA applies to a work-related injury is exclusively a federal question which Congress never intended for state courts to resolve. See 33 U.S.C. § 921; cf. Zapata Haynie Corp. v. Barnard, 933 F.2d 256, 258 (4th Cir. 1991) (noting that interpretation of the LHWCA is a matter for the federal executive and federal appeals courts). If we were to dismiss this appeal as unreviewable under 28 U.S.C. § 1447(d), then we would be leaving in place a remand order which would commit to the state courts the decision of whether the LHWCA provided coverage to the employee. To follow that course would thus deprive the federal courts of their proper role in resolving this important issue and would circumvent Congress' intent that LHWCA coverage issues be resolved in the first instance by the Department of Labor and ultimately in the federal courts of appeals. See 33 U.S.C. §§ 919, 921.

Thus, because the coverage question of the LHWCA is a conceptual antecedent for the district court's remand order, it would appear that we are not prohibited by § 1447(d) from reviewing that order. See Mangold v. Analytic Servs., Inc., 77 F.3d 1442, 1450-51 (4th Cir.

5

1996). In <u>Mangold</u>, we held that if, after examining the district court's reasoning for remand, we determined that the order did not fall precisely under the grounds identified in § 1445(c), we were authorized to review the order on appeal. <u>See Quackenbush</u> , 116 S. Ct. at 1719-20. We said, "review of the remand order, because not actually based on either of the grounds specified in § 1447(c), is not barred by § 1447(d)." 77 F.3d at 1453.

If we have any doubt about the correctness of this analysis, we are authorized in these circumstances to issue a writ of mandamus. To avoid forfeiting the federal courts' role of reviewing LHWCA coverage issues is one of those extraordinary situations envisioned in <u>Thermtron</u> for exercise of the writ. We held analogously in <u>Mangold</u> that "to fragment a claim between state and federal courts [was] fraught with mischief and capable of producing unnecessary tensions between the two systems" and that therefore we were justified in treating an appeal as a petition for a writ of mandamus. <u>Id.</u>

Accordingly, while we exercise appellate jurisdiction with some delicacy, we also recognize our review authority on the employer's petition for a writ of mandamus. <u>See Jamison</u>, 14 F.3d at 233-34. We now turn to the coverage question.

III

To be covered by the LHWCA, a work-related injury must have occurred on "navigable waters," as defined by 33 U.S.C. § 903(a), and the employee must have been engaged in "maritime employment," as defined by 33 U.S.C. § 902(3). The parties agree that Shives' injury occurred on navigable waters because it occurred while Shives was working at a terminal adjoining navigable waters. <u>See</u> 33 U.S.C. § 903(a) (defining "navigable waters" to include adjoining terminal areas). The sole issue therefore is whether Shives was "engaged in maritime employment" as defined by 33 U.S.C.§ 902(3) when he sustained his injury. While Shives acknowledges that 15% of his job entailed the loading and unloading of maritime freight, he contends that because, at the time of his injury, he was unloading freight from a train onto trucks, not ships, he was not covered by the LHWCA and therefore was entitled to pursue his FELA claim for negligence. His interest in an FELA claim stems from his belief that a recovery under

6

the FELA will be more remunerative than an award for workers compensation under the LHWCA.

CSXT concedes that at the time of Shives' injury, the loading activity was not of maritime freight nor in connection with a ship. It argues, however, that "the work which [Shives] was performing at the time of injury is of no legal import." It maintains that maritime employment is occupational, defined by whether the employee spends some portion of his overall work engaged in maritime employment. Because Shives' work concededly involved 15% maritime employment, CSXT argues, he was covered by the LHWCA.

The issue thus reduces to a two-part question: whether an employee who engages in maritime activities only 15% of the time is "engaged in maritime employment" as defined by the LHWCA and whether it matters that at the time of his injury he was performing a non-maritime duty.

Prior to 1972, the LHWCA applied only to injuries occurring on navigable water, and the line demarcating land and water also defined the line between coverage of the LHWCA and coverage of state workers' compensation laws. See generally Jonathan Corp. v. Brickhouse, 142 F.3d 217 (4th Cir. 1998). "As a consequence, Longshoremen continually walked in and out of LHWCA coverage as they walked up and down the gangplank from ship to shore during the loading and unloading of vessels." Id. at *2 (quoting Sidwell v. Express Container Servs., Inc., 71 F.3d 1134, 1135 (4th Cir. 1995)). To provide more uniform coverage for longshoremen as they loaded and unloaded ships and to provide federal coverage for all workers who loaded ships, whether they were on the water or the adjacent land, Congress amended the LHWCA to extend coverage to the area adjacent to the ship that is normally used for loading and unloading. In addition, because of this expanded geographical coverage, it restricted the coverage to maritime employment. Thus, while coverage before 1972 was based solely on a situs test delineated by the shoreline, coverage after the 1972 amendments was based on meeting a two-part situs and status requirement. See P.C. Pfeiffer Co. v. Ford, 444 U.S. 69, 73 (1979).

To satisfy the situs test adopted in 1972, an injury must occur on "navigable waters" defined to include "any adjoining pier, wharf, dry

7

dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel." 33 U.S.C. § 903(a). And to satisfy the status test, the employee must be engaged in "maritime employment," defined to include "any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker." 33 U.S.C. § 902(3).

While the new situs test mitigated the "walking in and out of coverage" problem by moving the line inland in order to cover workers loading and unloading ships both from on the water and from on the land, a worker could still walk into and out of a LHWCA situs because the line remained geographical. See Jonathan, 142 F.3d at 220. The status test, however, is occupational, intending to provide employees continuous coverage throughout their employment at a maritime situs regardless of the particular activity at the time of injury. As the Supreme Court stated in Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249 (1977):

> The Act focuses primarily on occupations-- longshoreman, harbor worker, ship repairman, shipbuilder, shipbreaker. Both the text and the history demonstrate a desire to provide continuous coverage throughout their employment to these amphibious workers who, without the 1972 amendments, would be covered only for part of their activity. It seems clear, therefore, that when Congress said it wanted to cover "longshoremen," it had in mind persons whose employment is such that they spend at least some of their time in indisputably longshoring operations and who, without the 1972 amendments, would be covered for only part of their activity.

Id. at 273 (emphasis added). Confirming later the occupational characteristic of this status test, the Court observed, "the `maritime employment' requirement is `an occupational test that focuses on loading and unloading.'" Herb's Welding, Inc. v. Gray, 470 U.S. 414, 423-24 (1985) (quoting Pfeiffer, 444 U.S. at 80). And in determining occupation, "the crucial factor is the nature of the activity to which a worker may be assigned." Pfeiffer, 444 U.S. at 82 (emphasis added). Finally, the Supreme Court has instructed that any coverage determi-

nation be informed by "an expansive view of the extended coverage." Caputo, 432 U.S. at 268. It said, "The Act `must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results.'" Id.

In short, the status inquiry focuses on the assigned occupational duties of the employee, and coverage is not denied simply because the employee was not performing a maritime function at the time of his injury. To determine whether the employee is engaged in maritime employment, we inquire whether the employee's <u>assigned</u> job requires his spending <u>some of his time in indisputably longshoring operations</u>.

This construction of the status requirement is consistent with Congress' intent to fill the gap that existed before the 1972 amendments when longshoremen could walk in and out of coverage as they walked up and down the gangplank. In combination with the situs requirement, the status requirement thus provides LHWCA benefits more seamlessly to all those who perform <u>some</u> longshoring operations. Indeed, it is instructive to recognize that an employer covered by the LHWCA is defined as one whose "employees are employed in maritime employment, <u>in whole or in part</u>, upon the navigable waters of the United States [as defined by the Act]." 33 U.S.C. § 902(4) (emphasis added). Were we to adopt a more restrictive interpretation that maritime employment refers only to the particular activities of the longshoreman being performed at the specific moment of injury, we would "bring the `walking in and out of coverage' problem back with a vengeance." <u>Chesapeake and Ohio Ry. Co. v. Schwalb</u>, 493 U.S. 40, 50 (1989) (Blackmun, J., concurring); <u>see also Caputo</u>, 432 U.S. at 274.

Our test requiring the examination of an employee's assigned duties to determine whether <u>some</u> of them include longshoring operations is similar to that adopted in other circuits. In <u>Boudloche v. Howard Trucking Co., Inc.</u>, 632 F.2d 1346 (5th Cir. 1980), the Fifth Circuit held that an employee who spent only 2-1/2 to 5% of his overall working time performing longshore work was nevertheless engaged in maritime employment since he spent "at least some of [his] time in undisputedly longshoring operations." <u>Id.</u> at 1347 (quoting <u>Caputo</u>, 432 U.S. at 273). The court observed

9

> Boudloche was directed to regularly perform <u>some</u> portion
> of what was undisputedly longshoring work at fully
> equipped docks and, for at least <u>some</u> part of his work, was
> required to perform the total maritime job at unequipped
> docks. The fact that his employer also assigned him broader
> duties as a truck driver cannot override its choice to make
> Boudloche a maritime employee under the Act.

<u>Id.</u> at 1348; <u>see also Howard v. Rebel Well Serv.</u>, 632 F.2d 1348 (5th
Cir. 1980) (a sandblaster who spent 10% of his time sandblasting
maritime equipment was engaged in maritime employment). The
Fifth Circuit subsequently summarized its rule, stating, "a claimant
will meet the status requirement of the Act, not only if he is engaged
in `maritime employment' at the time of injury, but also if he spends
some portion of his overall employment engaged in maritime activi-
ties." <u>Hullinghorst Indus., Inc. v. Carroll</u>, 650 F.2d 750, 754 (5th Cir.
Unit A, July 1981). <u>See also Garvey Grain Co. v. Director, OWCP</u>,
639 F.2d 366, 371 (7th Cir. 1981) (noting that "[t]he `moment of
injury' test is no longer the test to determine the status of an employee
under the Act" and that coverage may be found where an employee
"spends at least some of his time in indisputedly longshore opera-
tions"); <u>Sea-Land Servs., Inc. v. Director, OWCP</u>, 685 F.2d 1121,
1123 (9th Cir. 1982) (same).

Seagirt Marine Terminal is an intermodal maritime situs where
freight is transferred from train to ship, from train to truck, from truck
to ship, and from truck to train. When CSXT assigned its employees
the carmen's duties of loading and unloading its train cars at the ter-
minal, it expected that the carmen would unload all of its freight,
whether that freight was destined for truck or for ship. Likewise, it
expected the carmen would load its trains with freight that arrived at
the terminal, whether that freight arrived by truck or by ship. Because
its carmen's duties consisted of loading and unloading at a marine ter-
minal and <u>some</u> of the loading and unloading involved ships, the car-
men by occupation were engaged in maritime employment. The
fortuity that some freight at the terminal would bypass ships does not
deny the carmen's employment a maritime characteristic. Moreover,
as we have noted, even if the employee's particular function at the
time of his injury was not maritime, he is not denied coverage based
on a lack of maritime status. Because maritime status is an occupa-

10

tional inquiry, we determine only whether some of the employees' work was indisputedly maritime in nature.

Shives, hoping that the LHWCA does not cover him because of his expectation of realizing a more beneficial recovery through his FELA claim, argues that because only 15% of his duties involved the loading and unloading of maritime freight, he was not engaged in maritime employment. This argument, suggesting that maritime employment is determined by some defined percentage of an employee's work, however, is not useful and misdirects the inquiry. Congress wanted the LHWCA to cover longshoremen loading and unloading ships, whether they are on the ship or at the adjacent terminal, and the Supreme Court has clearly held that to give effect to this intent, the employee does not move in and out of maritime employment status for purposes of coverage under the Act. Shives was assigned maritime work as needed at the marine terminal, and this longshore work was not merely "momentary or episodic." Boudloche, 632 F.2d at 1348. It was an assigned portion of his duties necessary in order for CSXT to function at the terminal efficiently.

Undoubtedly, there is a level of longshore work assigned to an employee that may be so de minimis as to defeat coverage. We need not, in this case, determine that level because we conclude that Shives was clearly assigned to do some indisputably longshore work when he was assigned, as part of his job, to load and unload maritime freight at the Seagirt Marine Terminal.

The district court relied on our decision in Hayes v. CSX Transp., Inc., 985 F.2d 137 (4th Cir. 1993), in ruling that Shives was not engaged in maritime employment "as of the time of his injury." It noted that Hayes inquired whether the employee "was engaged in maritime employment at the time of his injury," id. at 140 (emphasis added), and reasoned that "none of the containers or other freight carried by the incoming train on which Mr. Shives was working at the time of his accident was destined for transport by a maritime vessel." While the status test properly inquires whether the employee was engaged in maritime employment at the time of his injury, this does not mean that his particular duties at the time of injury needed to be maritime in nature. Rather, the status test turns on whether the employee's occupation at the time of injury was maritime. By its

11

nature, therefore, a status test considers the employee's occupation as a whole, not the nature of the particular job function being performed at the time of injury. Indeed, this is how we understood the test in Hayes because we acknowledged that "the origins or destination of the loads being worked at the time [of Hayes' injury] are unknown." 985 F.2d at 139.

In summary, we hold that because, at the time of injury, Shives was performing his assigned work as a carman at the Seagirt Marine Terminal and because some of his carman's duties were indisputably maritime, Shives was engaged in maritime employment as defined by the LHWCA. Because Shives met both the situs and the status tests of the LHWCA, he was covered by the Act.

This LHWCA coverage is exclusive and preempts Shives from pursuing an FELA claim. See 33 U.S.C. § 905(a); Etheridge v. Norfolk & W. Ry. Co., 9 F.3d 1087, 1091 (4th Cir. 1993).

IV

Having concluded that Shives only has an LHWCA claim, and not an FELA claim, we are left with a procedural conundrum. Section 1441 of Title 28 authorizes removal of civil actions "of which the district courts have original jurisdiction." 28 U.S.C. § 1441(b); see also § 1441(a). While Shives' LHWCA claim arises under the laws of the United States, see 28 U.S.C. § 1331, it is not an action over which the district courts have original jurisdiction. An LHWCA claim must be filed with the Department of Labor where it is assigned to an administrative law judge whose decision is reviewed by the Benefits Review Board. 33 U.S.C. §§ 910(a), 921(b). Review by the courts is authorized through a petition for review, which may be filed only in the courts of appeals, not in the district court. 33 U.S.C. § 921(c).

Thus, not only was Shives' claim not removable as an FELA case, see 28 U.S.C. § 1445(a), it was also not removable under 28 U.S.C. § 1441(b). But the remedy for the improper removal in this case does not appear to be a remand to state court as ordered by the district court, which acted on its finding that this is an FELA case. State courts have jurisdiction over FELA cases, but they do not have jurisdiction over LHWCA cases.

12

While state court jurisdiction is not ordinarily a prerequisite for removability, see 28 U.S.C. § 1441(e), jurisdiction in the district court is, see 28 U.S.C. § 1441(a) & (b). Thus, we are faced with an LHWCA case over which neither the state court nor the district court had jurisdiction because such a claim could only be filed in the first instance with the Secretary of Labor.

While the only intuitive remedy might nevertheless be to remand this case to the state court to decide the coverage question, if we were to do so, we would be committing the federal question of LHWCA coverage to the state court when Congress intended that it be decided exclusively in federal court. In the peculiarities of this case, we believe that the district court should not have remanded the case to state court, but should have dismissed it. Accordingly, we vacate the district court's remand order and remand this case to the district court with instructions to dismiss the case for lack of subject matter jurisdiction. In this way, Shives will be able to proceed through the administrative process before the Department of Labor with his protectively filed LHWCA claim.

IT IS SO ORDERED

13